UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| SANDRA E. MERCADO, and VIVIAN N. LOPEZ, <br><br> Plaintiff, <br><br> v. <br><br> I.Q. DATA INTERNATIONAL, INC., and FPI MANAGEMENT, INC. d/b/a MONTANA AGAVE APARTMENTS, <br><br> Defendants. | CIVIL COMPLAINT <br><br> CASE NO. 3:22-cv-00186 <br><br> DEMAND FOR JURY TRIAL |

## COMPLAINT

NOW comes SANDRA E. MERCADO ("Sandra") and VIVIAN N. LOPEZ ("Vivian") (collectively "Plaintiffs"), by and through the undersigned, complaining as to the conduct of I.Q. DATA INTERNATIONAL, INC. ("I.Q.") and FPI MANAGEMENT, INC. d/b/a MONTANA AGAVE APARTMENTS ("FPI") (collectively "Defendants"), as follows:

### NATURE OF THE ACTION

1. Plaintiffs bring this action for damages pursuant to the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. §1692 *et seq.* against I.Q. for its unlawful conduct.

2. Plaintiffs further bring this action for damages and injunctive relief pursuant to the Texas Debt Collection Act ("TDCA") under Tex. Fin. Code Ann. § 392 *et seq.* against Defendants for their unlawful conduct.

### JURISDICTION AND VENUE

3. This action arises under and is brought pursuant to the FDCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1692, 28 U.S.C. §§1331 and 1337, as the action arises

1

under the laws of the United States. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Western District of Texas and a substantial portion the events or omissions giving rise to the claims occurred within the Western District of Texas.

5. Joinder of Plaintiff's claims against Defendants is proper under Fed. R. Civ. P. 20(a)(1)-(2) as the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and common questions of law or fact will arise.

## PARTIES

6. Plaintiffs are consumers over 18 years-of-age residing in Canutillo, Texas, which lies within the Western District of Texas.

7. I.Q. is a third party debt collector claiming to have "been serving the collection needs of businesses and consumers since 1998."[1] I.Q. is a corporation organized under the laws of the state of Washington who maintains its principal place of business at 21222 30th Drive Southeast, Suite 120, Bothell, Washington.

8. FPI is a property management company who, upon information and belief, manages a number of apartment complexes across the country, including the Montana Agave apartments located in El Paso, Texas. FPI is a corporation organized under the laws of the state of California with its principal place of business located at 800 Iron Point Road, Folsom, California.

9. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

---

[1] https://www.iqdata-inc.com/about-us

**FACTS SUPPORTING CAUSES OF ACTION**

10. The instant action arises out of the nature of Defendants' efforts to collect upon a debt ("subject debt") Plaintiffs are said to owe to FPI in connection with a residential lease Plaintiffs had with FPI.

11. On or about December 13, 2021, Plaintiffs moved out of their apartment with FPI due to a job transfer which necessitated Plaintiffs' move.

12. After Plaintiffs moved out, on or about December 22, 2021, FPI provided Plaintiffs a statement of their remaining obligation said to be owed to FPI in connection with their lease.

13. FPI's statement provided that "[t]his is a demand for payment of $101.15 which is the amount due after forfeiting your security deposit. Please pay immediately."

14. FPI's statement further provided an itemization of all the various charges and credits which supported its demand for $101.15.

15. FPI's statement further clarified that any payment(s) made in connection with the subject debt within 45 days of the move-out date would be made to FPI, and payments made after that 45 day period would result in the debt being collected by I.Q.

16. Plaintiffs lost track of the subject debt and failed to make payment to FPI within 45 days of their move out.

17. As such and upon information and belief, FPI considered the subject debt to be in default following 45 days of Plaintiffs' move-out date, at which point I.Q. began its efforts to collect upon the subject debt.

18. On or about February 21, 2022, I.Q. sent Plaintiffs a collection letter seeking collection of the subject debt.

19. This collection letter was the first written communication Plaintiffs received from Defendant in connection with the subject debt.

20. I.Q.'s collection letter clarified that the subject debt was owed in connection with Plaintiffs' lease at the Montana Agave apartments run by FPI, and provided that the balance of the debt totaled $757.77.

21. I.Q.'s collection letter further provided an itemization of the subject debt, which stated: "As of 12/13/21, you owed: $749.15. Between 12/13/21 and today: You were charged this amount in interest: $8.62" – comprising the grand total of $757.77.

22. In addition to I.Q.'s collection letter, I.Q. reported the subject debt on Plaintiffs' credit reports as having a balance over $760.

23. Plaintiffs were shocked and perplexed as to how the subject debt, which totaled only $101.15 on December 13, 2021, somehow ballooned to over $700.00.

24. I.Q.'s collection letter fails to explain any justification for its demands for an amount almost 7 times greater than the actual balance of the subject debt.

25. After noticing Defendants' conduct and the nature of I.Q.'s collection efforts, Plaintiffs contacted I.Q. to dispute the debt and explain how the amount they were attempting to collect was incorrect.

26. However, rather than listen to Plaintiffs, I.Q. instead repeatedly attempted to get them to provide payment information and pay the subject debt at the inflated amount.

27. Upon information and belief, I.Q. erroneously and without any justification caused the subject debt to be artificially inflated by hundreds of dollars, and in turn reported the subject debt on Plaintiffs' credit report with the unjustifiably inflated amount, in an effort to get Plaintiffs to agree to make payment greater than their actual obligation on the subject debt.

28. I.Q.'s efforts in this regard are tantamount to extortion, as they seek to utilize the threat of (erroneous) negative credit information as a means to seek payment from consumers greater than their actual obligation on a particular debt.

29. At the time of I.Q.'s erroneous collection efforts and reporting of the subject debt, Plaintiffs were looking to rent a home, and thus Plaintiffs wanted to address the subject debt for the amount actually owed to facilitate the cleaning up of their credit; however, they were unwilling to pay more than 7 times what they actually owed.

30. Defendants' concerted conduct thus hampered Plaintiffs in their ability to receive financing or otherwise rent a desirable home – as was pointed out to Plaintiffs by a mortgage company that pulled Plaintiffs' credit and noted the subject debt as a problem.

31. Plaintiffs suffered significant emotional distress through the erroneous nature of Defendants' collection efforts, exacerbated by the extent to which I.Q.'s reporting of the subject debt was inhibiting Plaintiffs' ability to move forward with additional credit opportunities.

32. Plaintiffs have attempted to provide Defendants with all relevant information designed to reflect that I.Q. was seeking to collect an incorrect amount; however, I.Q. has persisted in its efforts to seek payment from Plaintiffs in an amount substantially greater than their actual obligation on the subject debt.

33. Frustrated and distressed by Defendants' conduct, Plaintiff sought the assistance of counsel in determining how to respond to Defendants' collection efforts.

34. Plaintiffs have wasted an extensive amount of time attempting to correct the erroneous nature of Defendants' collection efforts, to no avail.

35. Plaintiffs have suffered further concrete harm, including but not limited to, aggravation, stress, emotional distress, being hampered in their ability to address the subject debt as a result of

Defendants' conduct, maintenance of erroneously negative credit information as a result of Defendants' conduct, being hampered in their ability to qualify for subsequent credit opportunities, risk of making payment in an amount greater than their actual obligation on a particular debt, defamation, disclosure of incorrect financial information to more than one third party, invasion of privacy, denial of the benefit of their bargain in connection with the lease between FPI and Plaintiffs, and numerous violations of their state and federally protected interests to be free from deceptive, misleading, and unfair debt collection conduct on the part of debt collectors.

### COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
(PLAINTIFFS AGAINST I.Q.)

36. Plaintiffs repeat and reallege paragraphs 1 through 35 as though fully set forth herein.

37. Plaintiffs are "consumer[s]" as defined by 15 U.S.C. §1692a(3) of the FDCPA.

38. I.Q. is a "debt collector" as defined by §1692a(6) of the FDCPA, because they regularly use the mail and/or the telephone to collect, or attempt to collect, delinquent consumer accounts originally owed to others, and are similarly businesses whose principal purpose is the collection of debts.

39. The subject debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be due to another for personal, family, or household purposes.

    a. **Violations of the FDCPA §1692e**

40. The FDCPA, pursuant to 15 U.S.C. §1692e, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

41. In addition, this section enumerates specific violations, such as:

> "The false representation of . . . the character, amount, or legal status of any debt . . . ." 15 U.S.C. § 1692e(2)(A);

> "Communicating . . . to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8);

> "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §1692e(10).

42. I.Q. violated §§ 1692e, e(2)(A), e(8), and e(10) through their misrepresentations, both to Plaintiffs and third parties, regarding the nature and amount of the subject debt. As FPI's statement clarifies, Plaintiffs were only obligated to pay $101.15 in connection with the subject debt. However, I.Q. subsequently attempted to collect an amount over 7 times greater than Plaintiffs' actual obligation on the subject debt. Such conduct inherently misrepresented and falsely stated the nature and amount of the subject debt, and was done in a deceptive effort to compel Plaintiffs to make payment greater than their actual obligation on the subject debt. Further, given the stark difference between the actual amount of the subject debt and the nature of I.Q.'s reporting thereof, I.Q. should have known that its reporting of the subject debt was inaccurate. The deceptive nature and intent behind I.Q.'s conduct is further evinced through its efforts to convince Plaintiffs to pay the amount demanded by I.Q. despite their protests and information provided to I.Q. illustrating the erroneous nature of their collection efforts.

43. I.Q. further violated §§ 1692e, e(2)(A), and e(10) through its statement that "[a]s of 12/13/21, you owed $749.15." Even if I.Q. had some justification for inflating the amount of the subject debt (which it did not), its statement regarding the purported balance as of 12/13/21 is patently false. Plaintiffs only owed $101.15 in connection with the subject debt as of 12/13/21, as clarified by FPI's statement.

    b. **Violations of FDCPA § 1692f**

44. The FDCPA, pursuant to 15 U.S.C. §1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." Pursuant to § 1692f(1) a debt

collector is prohibited from engaging in "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

45. I.Q. violated §§ 1692f and f(1) through their unfair attempts to collect a debt from Plaintiffs at an amount substantially greater than their actual obligation thereon.

46. I.Q. further violated §§ 1692f and f(1) through their unfair efforts in demanding Plaintiffs payment information in the face of Plaintiffs informing I.Q. that it was attempting to collect an incorrect amount. It was inherently unfair for I.Q. to ignore Plaintiffs' provision of information and instead seek to utilize pressure-intensive tactics to collect their payments in an amount greater than their actual obligation.

c. **Violations of FDCPA § 1692g and 12 C.F.R. 1006.34**

47. The FDCPA, pursuant to 15 U.S.C. § 1692g(a), outlines various pieces of information that debt collectors must include in their initial communications with consumers. § 1692g(a)(1) requires an indication of "the amount of the debt." Regulation F, effective as of November 30, 2021, supplements § 1692g(a) with more explicit and detailed information that debt collectors *must* include in their initial communications in order to comply with the FDCPA and Regulation F. *See* 12 C.F.R. § 1006.34(c). Such information includes "the itemization date", § 1006.34(c)(2)(vi), "the amount of the debt on the itemization date", § 1006.34(c)(2)(vii), and "an itemization of the current amount of the debt reflecting interest, fees, payments, and credits since the itemization date." § 1006.34(c)(vii).

48. I.Q. violated § 1692g(a)(1) and 12 C.F.R. § 1006.34(c) through its incorrect articulation of the amount of the debt in the collection letter it sent to Plaintiffs. I.Q. grossly inflated the amount of the obligation and failed to explain the justification for this grossly inflated amount through the

itemizations provided. The FDCPA and corresponding regulations are designed to provide consumers accurate and complete information regarding the debts upon which debt collectors attempt to collect, and I.Q.'s conduct falls woefully short of meeting that standard.

WHEREFORE, Plaintiffs, SANDRA E. MERCADO, and VIVIAN N. LOPEZ, respectfully requests that this Honorable Court enter judgment in their favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiffs statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);

c. Awarding Plaintiffs actual damages, in an amount to be determined at trial, as provided under 15 U.S.C. §1692k(a)(1);

d. Awarding Plaintiffs costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3);

e. Enjoining I.Q. from further violations of law; and

f. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT
#### PLAINTIFFS AGAINST DEFENDANTS

49. Plaintiffs restate and reallege paragraphs 1 through 48 as though fully set forth herein.

50. Plaintiffs are "consumer[s]" as defined by Tex. Fin. Code Ann. § 392.001(1).

51. I.Q. is a "debt collector" and "third party debt collector" as defined by Tex. Fin. Code Ann. § 392.001(6) and (7).

52. FPI is a "debt collector" as defined by Tex. Fin. Code Ann. § 392.001(6).

53. Upon information and belief, FPI controlled the nature of I.Q.'s collection activities and controlled the nature of the communications with Plaintiffs such that a principal-agent relationship, respectively, exists between the parties. Further, at all relevant times FPI held I.Q. out to Plaintiffs as an agent acting on FPI's behalf, further cloaking I.Q. in the apparent authority to act on FPI's

behalf. As such, FPI is both directly liable for its conduct as a debt collector subject to the TDCA, as well as vicariously liable for the violations of law engaged in by its agent, I.Q.

54. The subject debt is a "consumer debt" as defined by Tex. Fin. Code Ann. § 392.001(2) as it is an obligation, or alleged obligation, arising from a transaction for personal, family, or household purposes.

### a. Violations of TDCA § 392.303

55. The TDCA, pursuant to Tex. Fin. Code § 392.303(a), proscribes a debt collector from engaging in a list of enumerated unfair and unconscionable acts, including "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest, charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code § 392.303(a)(2).

56. Defendants violated § 392.303(a)(2) through their efforts, both direct and indirect, to collect an amount from Plaintiffs which included illusory expenses substantially greater than Plaintiffs' actual obligation on the subject debt.

### b. Violations of TDCA § 392.304

57. The TDCA, pursuant to Tex. Fin. Code § 392.304(a)(8), prohibits debt collectors from "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." Further, pursuant to Tex. Fin. Code Ann. § 392.304(19), the TDCA broadly prohibits a debt collector from using any "false representation or deceptive means to collect a debt . . . ."

58. Defendants violated the above referenced portions of the TDCA through their deceptive and false representations made to Plaintiffs and third parties regarding the nature and amount of Plaintiffs' purported liability on the subject debt. As discussed at length above, Defendants, both

directly and indirectly, misrepresented the nature of Plaintiffs' obligation on the subject debt in an effort to benefit themselves by attempting to use the pressure of credit reporting to compel Plaintiffs to make a payment greater than what was actually owed.

59. Alternatively, in the event the subject debt was somehow properly inflated upon I.Q. attempting to collect the debt (which, again, it was not), then FPI violated the TDCA through its misrepresentations and deceptive articulation of the balance of the subject debt in the statement it provided to Plaintiffs.

WHEREFORE, Plaintiffs, SANDRA E. MERCADO, and VIVIAN N. LOPEZ, respectfully requests that this Honorable Court enter judgment in their favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Entitling Plaintiffs to injunctive relief pursuant to Tex. Fin. Code Ann. § 392.403(a)(1);

c. Awarding Plaintiffs actual damages, pursuant to Tex. Fin. Code Ann. § 392.403(a)(2);

d. Awarding Plaintiff punitive damages, in an amount to be determined at trial, for the underlying violations;

e. Awarding Plaintiff costs and reasonable attorney fees, pursuant to Tex. Fin. Code Ann. § 392.403(b);

Awarding any other relief as this Honorable Court deems just and appropriate

Dated:  May 25, 2022

Respectfully submitted,

s/ Nathan C. Volheim
Nathan C. Volheim, Esq. #6302103
Counsel for Plaintiff
Admitted in the Western District of Texas
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(630) 568-3056 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com